IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASSOCIATED CONCRETE CONTRACTORS, INC.<br>PLAINTIFF,<br><br>V.<br><br>SMYRNA READY MIX CONCRETE, LLC<br><br>DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:25-CV-01518-N |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Associated Concrete Contractors, Inc. (collectively, "Plaintiff" or "ACC"), and complains of Smyrna Ready Mix Concrete, LLC ("Defendant" or the "SRM") and would respectfully show this Court as follows:

## I. DISCOVERY

1. Discovery of this case shall proceed in accordance with the Federal Rules of Civil Procedure now that it has been removed.

## II. PARTIES AND SERVICE OF CITATION

2. Plaintiff Associated Concrete Contractors, Inc. is a Nevada Corporation.

3. Defendant Smyrna Ready Mix Concrete, LLC is a foreign limited liability company that has appeared in this matter.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over Defendant because Defendant is a limited liability company doing business in Texas. Furthermore, the actions or omissions of Defendant giving rise to Plaintiff's claims arose from Defendant's specific contacts with the State of Texas.

5. Venue is proper in Dallas County because all or a substantial part of the events giving rise to the claims occurred in Dallas County. See TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1).

6. Defendant's removed this case pursuant to 28 U.S.C. § 1332.

## IV. RELIEF

7. Plaintiff seeks monetary relief over $1,000,000.00. TEX. R. CIV. P. 47(C)(4).

## V. FACTUAL BACKGROUND

8. In January of 2024, ACC contracted with SRM to provide concrete for the Rosewood Turtle Creek Condos (the "Project").

9. SRM warranted that "the concrete as delivered to this project will meet or exceed the design strength specified on the delivery ticket when evaluated in accordance with ACI-318, ACI-301, and ASTM C-94, latest revision."[1] SRM warranted that the concrete provided to the Project would meet the PSI and strength listed in the submittals.[2]

10. However, the concrete that SRM provided for the Project failed to meet the specified PSI required strength by 28 days. Specifically, per the Defendant's submittals, the specified strength for the foundation was promised to be 5000 psi at 28 days, and the sheer walls and columns would reach 7,000 psi at 28 days.[3] ACC notified SRM that the concrete SRM provided for the Project did

---

[1] Exhibit A – SRM's Warranty of Concrete Strength.
[2] Exhibit B – SRM Submittals for the Project.
[3] Exhibit B – SRM Submittals for the Project.

not meet the required strength within 28 days and that the owner required the concrete to be removed and replaced.

11. When SRM received the first tests from May 11, 2024, which showed that the concrete failed the strength test, SRM told ACC that the lab results provided by ECS Southwest LLP under its contract with ACC's customer USAI Construction Services, LLC, were not reliable. ECS Southwest, LLP's test results sent to SRM showed the 28-day psi tests for the foundation did not exceed 5,000 psi by 28 days.

12. The concrete that did not meet the minimum strength requirements at 28 days contained defects when the concrete was delivered to ACC, as it was poured directly from SRM trucks with only permissible additions of water that are reflected in the delivery tickets. Based on the curing process for concrete, if the concrete is manufactured correctly, it will reach the required strength by the requisite date. If the concrete is not manufactured correctly, then it does not reach the required strength by the requisite date. In this case, the concrete that became the foundation, the sheer walls, and the columns did not meet the required strength by the requisite dates and are therefore defective.

13. Despite being notified of the deficiency and being given the opportunity to cure the problem, SRM maintained that the test results were not reliable and suggested and encouraged ACC to continue using its concrete.

14. Based on SRM's representations, ACC continued to pour SRM concrete for the Project. This resulted in even more concrete that ACC was forced to remove and replace, and increased ACC's damages significantly.

15. SRM failed to pay any amount for the replacement of the defective concrete or offer to replace the concrete, even when presented with all the test results showing that the concrete had

failed the strength tests.[4] In fact, SRM hired its own company, Terracon, to test the concrete, and they reached the same results.[5] The four sets of samples that Terracon returned show the following means: set 1 at 2,920 psi, set 2 at 3,870 psi, set 3 at 3,070 psi and set 4 at 4,230 psi as of June 24, 2024, which is at 44 days. In addition to the concrete failing strength test required at 28 days, Terracon, which was hired by SRM, concluded that even at 44 days, the concrete still had not reached strengths that were required at 28 days. By 56 days, the expectation is that the minimum expected strength for a 5,000 psi mix used in the foundation should be at least 6,000 psi as concrete continues to gain strength over time.

16. SRM was given a reasonable time prior to the removal of the concrete to cure the issue, and it failed to do so.

17. The concrete for the Project was required to meet the minimum strength within 28 days. Failing to meet the minimum required strength within 28 days would mean the concrete was not compliant with the submittals, not fit for its intended purpose, and not fit for ordinary purposes as the structural integrity of the concrete is in question when it does not meet the required strength within a required time period. Since the concrete did not meet the minimum strength within 28 days, the owner required the removal of the non-compliant concrete and ordered that SRM could no longer be used as the supplier due to the inconsistencies.

18. Consistent with the general practice in the construction industry, when concrete does not meet strength within the requisite time, it must be removed. This is especially true if the concrete is intended to be the base of a very tall structure, as the concrete in this Project was intended to be. Concrete that does not meet strength within the requisite time has questionable structural integrity and is not fit for ordinary purposes.

---

[4] Exhibit C – Engineering Tests
[5] Exhibit C – Engineering Tests

19. SRM was required to provide concrete that met the specifications for the Project and failed to do so. Additionally, SRM had additional duties outside the contractual duties to provide concrete that was fit for the purpose of the Project and ordinary purposes, which the defective concrete was not. ACC fulfilled its obligations and continued to pay SRM.

20. Specifically, it cost ACC a total of $1,236,528.41 to remove and replace SRM's defective concrete. Importantly, while there were some portions of the build that contained concrete that met the required strength, based on the placement of the concrete that did not meet strength, all the concrete supplied by SRM had to be removed and replaced. In the process of removing the concrete, several other scopes of work for both ACC and other subcontractors had to be redone. Specifically, the rebar, waterproofing, and plumbing had to be redone when the concrete was removed, as all those scopes of work are either contained within the concrete or attached to it such that removal of the concrete necessitates replacement.

21. Further, there was a job delay of 9 weeks, costs for testing the new concrete, and other associated costs which Plaintiff was forced to bear based on SRM's failure to cure the issue.

22. The total cost includes the amount to remove and replace the concrete and all the affected scopes of work that had been completed and a chargeback for the project delay. Thus, due to SRM's negligence and defective concrete, ACC has suffered $1,236,528.41 in damages.

## VI. BREACH OF CONTRACT

23. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

24. Plaintiff and Defendant entered into a valid agreement via the submittals and delivery tickets.

25. Pursuant to that agreement, SRM agreed to provide concrete that met the specifications for the Project. Plaintiff has performed its portion of the contract by tendering payment to SRM.

26. However, SRM breached that agreement by failing to provide concrete that met the Project specifications. When Associated Concrete learned that the concrete did not meet the specifications, it rejected any further concrete as a breach of the agreement.

27. As a result of the breach, Plaintiff has suffered damages, including being forced to pay for the removal of defective concrete and non-defective concrete and scopes of work that, by their placement, necessitated removal when the defective concrete was removed.

## VII. NEGLIGENCE

28. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

29. Defendant owed the legal duty to Plaintiff to send concrete for the Project that complied with the specifications and was without defects, including that the concrete would reach the necessary strength by 28 days to ensure the structural integrity of the concrete.

30. Defendant breached that duty by sending sub-par, defective concrete that did not meet the necessary strength by 28 days.

31. As a result of the breach, Plaintiff has suffered damages, including being forced to pay for the removal of defective concrete and non-defective concrete and scopes of work that, by their placement, necessitated removal when the defective concrete was removed.

## VIII. BREACH OF WARRANTY – EXPRESS

32. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

33. Defendant expressly warranted that the concrete it provided for the Project would meet specifications. Specifically, SRM warranted that "that the concrete as delivered to this project will meet or exceed the design strength specified on the delivery ticket when evaluated in accordance

with ACI-318, ACI-301, and ASTM C-94, latest revision."[6] SRM warranted that the concrete provided to the Project would meet the PSI and strength listed in the submittals.[7]

34. The warranty from Defendant that its concrete would meet specifications was the basis for the agreement between Defendant and Plaintiff. Plaintiff relied upon that representation to decide to use SRM as its supplier.

35. SRM breached the express warranty because the concrete failed to meet the specifications for the Project. The failure to meet the specifications was the proximate cause of ACC's injury because the non-compliant concrete could not serve as the base of the Project and because it did not strictly comply with the warranty.

36. Plaintiff was injured as a result of the breach as the defective concrete could not serve as the base of the Project because it did not meet the required strength within 28 days.

37. SRM was notified of the failure of the concrete to meet the required strength and that it was non-compliant with the express warranty, but failed to cure the defect after a reasonable time.

38. As a result of the breach, Plaintiff has suffered damages, including being forced to pay for the removal of defective concrete and non-defective concrete and scopes of work that, by their placement, necessitated removal when the defective concrete was removed.

## IX. BREACH OF WARRANTY – IMPLIED

39. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

40. Defendant's concrete supplied to the Project was also covered by the warranty of fitness for a particular purpose and the warranty of merchantability.

41. Defendant knew that the concrete that Plaintiff had ordered would be used in a 19-story building and would need to meet the specifications of the Project. Plaintiff relied on SRM's skill

[6] Exhibit A – SRM Warranty.
[7] Exhibit B – SRM Submittals for the Project.

to furnish suitable goods for the Project.

42. The goods that Defendant furnished were not fit for the purpose of the Project as the concrete did not have proper structural integrity because it did not meet the required strength within 28 days. Specifically, the purpose of the concrete was to serve as the foundation of a 19-story building, which requires the concrete to meet certain standards, including ACI-318, ACI-301, and ASTM C-94. Since the concrete in the sheer walls and foundation did not meet the standards, it was not fit for the purpose of the Project.

43. Defendant sold the defective concrete to Plaintiff. The product was not fit for its ordinary purpose. Specifically, for concrete to be fit for its ordinary purpose, it must meet certain strength requirements at the requisite time. The failure to meet the strength requirements renders the concrete unfit for its ordinary purposes. The concrete that Defendant sold to Plaintiff, which became the foundation, sheer walls, and columns was not fit for its ordinary purpose when it was delivered because it did not meet the required strength at the requisite time.

44. Defendant was notified of the breach within a reasonable time and was given a reasonable opportunity to cure the defect.

45. As a result of the breach, Plaintiff has suffered damages, including being forced to pay for the removal of defective concrete and non-defective concrete and scopes of work that, by their placement, necessitated removal when the defective concrete was removed.

## X. PRODUCTS LIABILITY

46. Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

47. Defendant supplied a defective product to Plaintiff. This product's liability action is pursuant to common law, strict products liability, negligence, and the breach of the express and implied warranties. Tex. Civ. Prac. and Rem Code § 82.0001.

48. The defect in the concrete – that it did not cure properly to meet the required strength –

made the product unreasonably dangerous, as the concrete was intended to be the foundation of a 19-story building.

49. The defect in the concrete was the producing cause of Plaintiff's damages because if the concrete had been properly manufactured, it would not have required replacement.

50. As a result of the defective concrete, Plaintiff has suffered damages, including being forced to pay for the removal of defective concrete and non-defective concrete and scopes of work that, by their placement, necessitated removal when the defective concrete was removed.

## XI. ATTORNEYS' FEES

51. Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

52. As a result of the above-referenced conduct, Plaintiffs have been forced to retain the undersigned attorneys. Plaintiffs are entitled to recover reasonable and necessary attorneys' fees pursuant to § 38.001.

## XII. JURY DEMAND

53. Plaintiffs incorporate the foregoing paragraphs as if fully stated herein

54. Plaintiff hereby demands a jury trial.

## XIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer; that this cause be set for trial; that Plaintiffs recover judgment of and from said Defendant for the following damages;

1. Actual damages;
2. Reasonable and necessary attorneys' fees;
3. Costs of suit;
4. Pre- and post-judgment interest; and
5. Such other relief, both in equity and law, to which Plaintiffs show they are justly entitled.

**BEARD KULTGEN BROPHY**
**BOSTWICK & DICKSON, PLLC**

By: ______________________
Frederick Bostwick
State Bar No. 02682500
Blaine McSwain
State Bar No. 24119222
J. David Dickson
State Bar No. 05839500
Kimberly Cormier
State Bar No. 00787872
Andy McSwain
State Bar No. 13861100
220 South Fourth Street
Waco, Texas 76701
Tel (254) 776-5500
Fax (254) 776-3591
AND
15150 Preston Road, Suite 230
Dallas, Texas 75248
Tel (214) 761-6460
Fax (214) 761-6469
dickson@thetexasfirm.com
bostwick@thetexasfirm.com
bmcswain@thetexasfirm.com
kcormier@thetexasfirm.com
mcswain@thetexasfirm.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The foregoing was forwarded to all attorneys of record in this case via electronic notice upon the filing of this Notice via the electronic case filing procedures in the Northern District of Texas and via email to the following:

**BARNES & THORNBURG LLP**
Thomas G. Haskins, Jr.
thaskins@btlaw.com
Joseph Gergel
jgergel@btlaw.com
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
(214) 258-4200
(214) 258-4199 (Facsimile)
***Attorneys for Defendant***

By:______________________
Andy McSwain